UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF ALABAMA,<br><br>            Plaintiffs,<br><br>      v.<br><br>BESSEMER PETROLEUM, INC.;<br>TRI-STATE PETROLEUM PRODUCTS, LLC;<br>and TWIN STATES PETROLEUM PRODUCTS, LLC,<br><br>            Defendants. | Civil Action No. _____ |

## COMPLAINT

The UNITED STATES OF AMERICA, by the authority of the Attorney General and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Attorney General for the State of Alabama, on behalf of the Alabama Department of Environmental Management ("ADEM"), file this Complaint and allege as follows:

### NATURE OF THE ACTION

1.      This is a civil action for injunctive relief and the assessment of civil penalties for past and ongoing violations of the Solid Waste Disposal Act ("SWDA"), as amended by the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k as well as for the failure to comply with Administrative Orders issued pursuant to RCRA Section 7003, 42 U.S.C. § 6973, and the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), Section 311(c), 33 U.S.C. § 1321(c). These violations occurred in

1

connection with a bulk fuel and oil storage and distribution facility located at 2701 8th Avenue North, Bessemer, Jefferson County Alabama, 35021 ("the Facility").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and the parties pursuant to RCRA §§ 7003(b) and 9006(a)(1), 42 U.S.C. §§ 6973(b) and 6991e(a)(1), and also CWA § 311(b)(7)(E) and 311(n), 33 U.S.C. § 1321(b)(7)(E), and 1321(n), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

3. Venue is proper in this judicial district pursuant to RCRA §§ 7003(b) and 9006(a)(1), 42 U.S.C. §§ 6973(b) and 6991e(a)(1), CWA § 311(b)(7)(E), 33 U.S.C. § 1321(b)(7)(E) and 28 U.S.C. §§ 1391(b)–(c) and 1395(a), because the Bessemer Facility is located in this District and the relevant violations occurred in this District.

## NOTICE

4. Notice of the commencement of this action has been provided to the State of Alabama in accordance with RCRA § 9006(a)(2), 42 U.S.C. § 6991e(a)(2)

## DEFENDANTS

5. Defendant BESSEMER PETROLEUM, INC. ("Bessemer Petroleum") is an Alabama corporation, created on or about October 2, 1992. Bessemer Petroleum purchased the Facility from Bessemer Oil Company on or about January 8, 1993, with a separate bill of sale related to the transfer of ownership of certain underground storage tanks ("USTs"). Bessemer Petroleum is the last registered owner/operator of the USTs based on ADEM records.

6. Defendant TRI-STATE PETROLEUM PRODUCTS, LLC ("Tri-State") is a Mississippi limited liability company created on or about November 15, 2005. Tri-State acquired the Facility via a foreclosure deed on or about November 22, 2005.

7. Defendant TWIN STATES PETROLEUM PRODUCTS, LLC ("Twin States") is a Mississippi limited liability company created on or about February 25, 2008. Twin States acquired the Facility on or about April 5, 2008, and remains the current owner and/or operator of the Facility.

8. Each Defendant is a "person" within the meaning of RCRA §§ 1004(15) and 9001(5), 42 U.S.C. §§ 6903(15) and 6991(5), and CWA § 311(a)(7), 33 U.S.C. § 1321(a)(7).

9. At times relevant to this Complaint, each Defendant was an "owner" and/or "operator" of either the Facility and/or its associated USTs, within the meaning of RCRA § 9001(3)-(4), 42 U.S.C. § 6991(3)-(4), and ALA. CODE § 22-36-2(4)-(5).

## DEFINITIONS

10. Unless otherwise expressly provided herein, terms used in this Complaint that are defined in RCRA or the CWA, or their implementing regulations, shall have the meaning assigned to them in the statutes or their implementing regulations.

## RCRA UST PROGRAM

11. RCRA Subtitle I regulates the operation of USTs. 42 U.S.C. §§ 6991-6991m. Pursuant to RCRA § 9003, 42 U.S.C. § 6991b, EPA promulgated release detection, prevention, and correction regulations for USTs on September 23, 1988, with an effective date of December 22, 1988. *See* Underground Storage Tanks; Technical Requirements, 53 Fed. Reg. 37,082 (Sept. 23, 1988) (codified at 40 C.F.R. pt. 280).

12. Pursuant to these regulations, USTs must be operated in such a way as to minimize releases by complying with tank performance and operating standards, and by using an approved leak detection method. Facilities must also report and investigate suspected releases and maintain financial responsibility for taking corrective action and for compensating third

3

parties for injuries or damages caused by accidental releases from USTs. RCRA § 9003, 42 U.S.C. § 6991b; 40 C.F.R. pt. 280.

13. Pursuant to RCRA § 9004, 42 U.S.C. § 6991c, states may apply to EPA for approval of a UST program, which, when approved, operates *in lieu* of the federal program promulgated under Section 9003. The provisions of an authorized state program are enforceable by EPA. RCRA § 9006, 42 U.S.C. § 6991e.

14. On March 25, 1997, EPA granted final approval of Alabama's UST program. *See* Underground Storage Tank Program: Approved State Program for Alabama, 62 Fed. Reg. 3,613 (Jan. 24, 1997) (codified at 40 C.F.R. pt. 282). Alabama's approved UST program regulations are codified at ALA. ADMIN. CODE r. 335-6-15 (1994).

15. At the time of the violations at issue in this Complaint, the Facility contained USTs, as defined by RCRA § 9001(10), 42 U.S.C. § 6991(10), and ALA. CODE § 22-36-2(11). The USTs at the Facility were used to store "regulated substances" as defined by RCRA § 9001(7), 42 U.S.C. 6991(7), and ALA. CODE § 22-36-2(9).

16. RCRA provides that any owner or operator of a UST who fails to comply with any requirement or standard that either is part of an approved State UST program under RCRA § 9004, or part of the Federal UST program under RCRA § 9003, is subject to civil penalties not to exceed $10,000 for each tank for each day of violation. 42 U.S.C. § 6991e(d)(2). The Civil Monetary Penalty Inflation Adjustment Rule, 73 Fed. Reg. 75,340 (Dec. 11, 2008), increased this penalty to $11,000 per tank per day for violations occurring between March 15, 2004, through January 12, 2009, and to $16,000 per tank per day for violations occurring after January 12, 2009. 40 C.F.R. § 19.4.

17.     The United States and the State of Alabama allege RCRA and State law UST violations within Counts #1-6 of this Complaint.

## RCRA ADMINISTRATIVE ORDER

18.     RCRA § 7003(a), 42 U.S.C. § 6973(a), authorizes EPA to issue an order against any person whose past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste has contributed, or is contributing, to conditions which may present an imminent and substantial endangerment to health or the environment.

19.     Pursuant to RCRA § 7003(b), 42 U.S.C. § 6973(b), EPA may bring an action in the appropriate United States district court to enforce an order issued under Section 7003(a). EPA may seek fines no greater than $5,000 for each day during which a violation of, or failure to comply with, the 7003 order occurs. The Civil Monetary Penalty Inflation Adjustment Rule increased this penalty to $6,500 per day for violations occurring between March 15, 2004, and January 12, 2009, and to $7,500 per day for violations occurring after January 12, 2009. 40 C.F.R. § 19.4.

20.     The United States alleges noncompliance with a RCRA § 7003 Order within Count #7 of this Complaint.

## CWA ADMINISTRATIVE ORDER

21.     CWA § 311(c)(1), 33 U.S.C. § 1321(c)(1), authorizes EPA to remove or arrange for the removal of a discharge or mitigate or prevent a substantial threat of a discharge of oil into or on navigable waters.

22.     Pursuant to CWA § 311(b)(7)(B), 33 U.S.C. § 1321(b)(7)(B), EPA may bring an action in the appropriate United States district court to enforce an order issued under Section 311(c). EPA may seek fines no greater than $25,000 for each day during which a violation of, or

failure to comply with, the 311(c) order occurs. The Civil Monetary Penalty Inflation Adjustment Rule increased this penalty to $37,500 per day for violations occurring after January 12, 2009. 40 C.F.R. § 19.4.

23. The United States alleges noncompliance with a CWA § 311(c) Order within Count #8 of this Complaint.

## FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

24. The Facility consists of approximately four acres and is an abandoned bulk fuel distribution and storage facility. As of January 2010, there were 27 non-operating Aboveground Storage Tanks ("ASTs") with limited product levels, along with one 17,000-gallon AST that was partially full with an oil/water mixture, four USTs, and a full 20,000-gallon oil/water separator. The Facility has the capacity to store approximately 179,000 gallons of oil in ASTs and USTs, which are located near Valley Creek, a water of the United States.

25. On or about January 8, 1993, Bessemer Petroleum acquired the Facility, including the USTs, from Bessemer Oil Company via Statutory Warranty Deed and Bill of Sale.

26. On or about July 24, 1997, Bessemer Petroleum submitted a UST notification form for four USTs at the Facility, listing Bessemer Petroleum as both owner and operator of the tanks.

27. ADEM conducted three inspections of the Facility between February 14, 2000, and March 9, 2000. During the February 2000 inspection, ADEM reported that two automatic line leak detectors were missing and that no documentation showed that an annual line tightness test had been performed. In March 2000, following complaints from the Bessemer Police Department that petroleum was entering a storm water drain at the Facility; inspectors observed an off-site storm drain overflowing with storm water that had a strong odor of petroleum. ADEM

inspectors also found evidence of petroleum seeping from the ground which appeared to emanate from the ASTs located just inside the Facility fence. A follow-up visit by ADEM found that Bessemer Petroleum had failed to produce the required paperwork showing an annual Statistical Reconciliation Report for release detection monitoring. On April 13, 2000, Bessemer Petroleum signed a Consent Order with ADEM addressing UST, Spill Prevention Control and Countermeasures ("SPCC"), and National Pollutant Discharge Elimination System ("NPDES") compliance issues.

28. On March 8, 2000, Bessemer Petroleum submitted a Notice of Intent to be covered by an NPDES General Permit for storm water discharges. On March 31, 2000, ADEM granted coverage to Bessemer Petroleum under the General Permit, effective April 1, 2000.

29. On June 13, 2000, ADEM sent Bessemer Petroleum a "Notice of Alabama Trust Fund Ineligibility" based on Bessemer Petroleum's failure to comply with leak detection requirements.

30. On March 28, 2006, ADEM filed a civil complaint against Bessemer Petroleum in Montgomery County Circuit Court, in Montgomery, Alabama, for failure to bring the Facility into compliance with required release detection methods, periodic cathodic protection inspection and impressed cathodic protection inspections, and for unpermitted discharges and failure to comply with the Facility's NPDES permit.

31. On February 6, 2007, the Montgomery Circuit Court entered a Default Judgment against Bessemer Petroleum for the company's failure to respond to the ADEM complaint.

32. On March 28, 2007, ADEM conducted a UST Compliance Program inspection of the Facility and determined that Bessemer Petroleum was in violation of ALA. ADMIN. CODE r. 335-6-15-.33, for its failure to maintain corrosion protection for temporarily closed USTs.

7

33.     On November 19, 2007, ADEM referred the Facility to EPA for federal enforcement. ADEM indicated that Bessemer Petroleum had failed to comply with the April 2000 Consent Order as well as the Default Judgment enforcing the Consent Order.

34.     On March 26, 2008, EPA conducted a multi-media inspection of the Facility with ADEM. At the time of the inspection, the Facility was abandoned. EPA determined that potential UST violations included failure to adhere to release detection and corrosion protection requirements; failure to secure lines and pumps; failure to permanently close USTs; and failure to provide financial assurance. The March 26, 2008, inspection also included an SPCC inspection. To date, the Facility has not produced a copy of its SPCC plan.

35.     On July 24, 2008, EPA Region 4 issued an Administrative Order ("7003 Order") to Bessemer Petroleum pursuant to RCRA Section 7003(a), 42 U.S.C. § 6973(a). The 7003 Order followed the Agency's determination that the handling, storage, treatment, transportation, or disposal of solid and/or hazardous wastes at the Facility may present an imminent and substantial endangerment to human health or the environment. EPA received no response to the 7003 Order.

36.     On September 15, 2008, EPA Region 4's Emergency Response and Removal Branch received a request for assistance from ADEM regarding waste petroleum products that had migrated off site and had entered an adjacent storm drain that leads to a culvert and eventually to Valley Creek.

37.     On September 16, 2008, an EPA Region 4 On-Scene Coordinator ("OSC") was dispatched to the Facility to investigate the nature of the release and to assist ADEM with site stabilization efforts. Based upon the OSC's observations, the waste petroleum appeared to be leaking from a tank battery on site, which contained several large ASTs.

38. On September 26, 2008, EPA Region 4 initiated an emergency removal action to stabilize conditions at the Facility.

39. Following the initiation of the emergency removal action, EPA met with Mr. Carl "Jack" Gordon on October 20, 2008, to discuss the remaining work to be performed at the Facility. On October 30, 2008, Bessemer Petroleum's contractor sent EPA Region 4 a work plan to perform the following tasks: securing the site; removing, disposing and/or recycling the free liquids at the site; removing and disposing of drums and their contents; and removal of sludges and liquids within the containment area and the oil/water separator. While the contractor initiated the above-described actions, the work was never completed.

40. On January 26, 2010, the Bessemer City Fire Department reported a release to the National Response Center. The Facility's oil/water separator had overflowed and oils were being released to the nearby street. ADEM again requested EPA's assistance. Upon arrival at the Facility, EPA's OSC observed that the manways leading underground to the oil/water separator were not secured. In addition, evidence of currently leaking oil and previously discharged oil was observed throughout the Facility.

41. Following the January 26, 2010, release, the OSC determined that because Bessemer Petroleum had not completed the work under its October 30, 2008, work plan, conditions at the Facility warranted the initiation of a time-critical removal action. As part of its activities, EPA removed free liquids from all tanks, the oil/water separator, and other containers on the Facility, as well as from the secondary containment areas; installed security measures on all tanks and other containers to deter unauthorized access and help prevent water infiltration; decontaminated the oil/water separator and secondary containment areas; and excavated and disposed of oil-contaminated soils.

42.     On August 12, 2010, EPA issued a CWA § 311(c) Order ("311(c) Order") to Bessemer Petroleum, Twin-States, and Carl "Jack" Gordon, directing these respondents to perform certain activities to remove, mitigate, or prevent a discharge or substantial threat of a discharge of oil into or upon navigable waters of the United States. No respondent responded to the 311(c) Order.

## FIRST CLAIM FOR RELIEF

<u>Failure to Perform Release Detection for USTs in Temporary Closure</u>

43.     The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against all Defendants.

44.     Pursuant to ALA. ADMIN. CODE r. 335-6-15-.36 and 335-6-15-.15 (1994), release detection must be maintained when USTs, which contain a regulated substance, are in temporary closure status. At the time of the February 14, 2000 inspection by ADEM and again at the time of the March 28, 2007, and the March 26, 2008, ADEM and EPA inspections, the Facility's USTs were in temporary closure status, but no documentation of release detection was produced, in violation of ALA. ADMIN. CODE. r. 335-6-15-.36 and 335-6-15-.15 (1994).

45.     Pursuant to RCRA § 9006(a) and (d), 42 U.S.C. § 6991e(a) and (d), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Bessemer Petroleum is liable from February 14, 2000-November 21, 2005, Defendant Tri-State is liable from November 22, 2005-April 4, 2008, and Defendant Twin States is liable from April 5, 2008-present for injunctive relief and civil penalties of up to $11,000 per tank per day of violation for violations occurring from February 14, 2000 through January 12, 2009 and up to $16,000 per tank per day for violations occurring after January 12, 2009.

## SECOND CLAIM FOR RELIEF

<u>Failure to Perform Release Detection for Underground Piping for USTs in Temporary Closure</u>

46. The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against all Defendants.

47. Pursuant to ALA. ADMIN. CODE r. 335-6-15-.36 and 335-6-15-.14(1)(a) (1994), owners and operators of USTs are required to provide release detection for any portion of the connected underground piping of a UST that routinely contains product.

48. Pursuant to ALA. ADMIN. CODE r. 335-6-15-.15(b) (1994), underground piping must be monitored for releases as specified by the regulatory requirements.

49. At the time of the February 14, 2000 inspection by ADEM and again in the March 28, 2007, and the March 26, 2008, ADEM and EPA inspections, the Facility's USTs were in temporary closure status, but no documentation of release detection for the underground piping was produced, in violation of ALA. ADMIN. CODE r. 335-6-15-.36, 335-6-15-.14(1)(a), and 335-6-15-.15(b) (1994).

50. Pursuant to RCRA § 9006(a) and (d), 42 U.S.C. § 6991e(a) and (d), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Bessemer Petroleum is liable from February 14, 2000-November 21, 2005, Defendant Tri-State is liable from November 22, 2005-April 4, 2008, and Defendant Twin States is liable from April 5, 2008-present for injunctive relief and civil penalties of up to $11,000 per tank per day of violation for violations occurring from February 14, 2000 through January 12, 2009, and up to $16,000 per tank per day for violations occurring after January 12, 2009.

## THIRD CLAIM FOR RELIEF

<u>Failure to Operate and Maintain Corrosion Protection</u>

51. The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against Defendants Tri-State and Twin States.

52. Pursuant to ALA. ADMIN. CODE r. 335-6-15-.36 (1994), the owner or operator of a UST in temporary closure status is required to operate and maintain corrosion protection measures in accordance with ALA. ADMIN. CODE r. 335-6-15-.10 (1994).

53. Pursuant to ALA. ADMIN. CODE r. 335-6-15-.10 (1994), the owner or operator of a UST is required to have a cathodic protection system in place, must routinely inspect the system for proper operation, and must maintain operational records of the system.

54. As of the March 26, 2008, EPA inspection, the impressed cathodic protection system at the Facility was switched to the "OFF" position and no electricity was being supplied to the system. As such, the cathodic protection system in place was not operating, in violation of ALA. ADMIN. CODE R. 335-6-15-.36 and 335-6-15-.10 (1994).

55. Defendants have not produced any documentation demonstrating compliance with the relevant corrosion protection requirements, in violation of ALA. ADMIN. CODE R. 335-6-15-.36 and 335-6-15-.10 (1994).

56. Pursuant to RCRA § 9006(a) and (d), 42 U.S.C. § 6991e(a) and (d), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Tri-State is liable from March 26, 2008-April 4, 2008 for injunctive relief and civil penalties of up to $11,000 per tank per day of violation for violations occurring from March 26, 2008 through April 4, 2008. Defendant Twin States is liable from April 5, 2008-January 12, 2009 for injunctive relief and civil penalties of up

to $11,000 per tank per day of violation for violations occurring from April 5, 2008 through January 12, 2009, and up to $16,000 per tank per day for violations occurring after January 12, 2009.

## FOURTH CLAIM FOR RELIEF

### Failure to Cap and Secure Lines and Pumps

57.  The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against all Defendants.

58.  Pursuant to ALA. ADMIN. CODE r. 335-6-15-.36(2)(a)-(b) (1994), when a UST is in temporary closure status for three months or more, owners and/or operators must cap and secure all lines, pumps, manways, and ancillary equipment, but vent lines must remain open and functioning.

59.  At the time of the February 14, 2000 inspection by ADEM and again at the March 26, 2008, EPA inspection, the line caps were not locked or secured, the USTs' turbine pump caps were not secured, and the product lines remained connected, in violation of ALA. ADMIN. CODE r. 335-6-15-.36(2)(a)-(b) (1994)

60.  Pursuant to RCRA § 9006(a) and (d), 42 U.S.C. § 6991e(a) and (d), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Bessemer Petroleum is liable from at least May 14, 2000 (three months after the February 14 , 2000 inspection)-November 21, 2005, Defendant Tri-State is liable from November 22, 2005-April 4, 2008, and Defendant Twin States is liable from April 5, 2008-present for injunctive relief and civil penalties of up to $11,000 per tank per day of violation for violations occurring from February 14, 2000 through January 12, 2009, and up to $16,000 per tank per day for violations occurring after January 12, 2009.

## FIFTH CLAIM FOR RELIEF

### Failure to Permanently Close USTs

61.     The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against all Defendants.

62.     Pursuant to ALA. ADMIN. CODE r. 335-6-15-.36(2)(c) (1994), when a UST has been temporarily closed for more than 12 months, if the UST system is substandard, i.e., it does not meet certain performance standards, the owner and/or operator is required to permanently close the UST system within 90 days and must perform a site assessment.

63.     The USTs located at the Facility are substandard and have been temporarily closed for greater than 12 months, since the February 14, 2000 inspection by ADEM.

64.     Defendants have failed to permanently close the USTs at the Facility, in violation of ALA. ADMIN. CODE r. 335-6-15-.36(2)(c) (1994).

65.     Pursuant to RCRA § 9006(a) and (d), 42 U.S.C. § 6991e(a) and (d), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Bessemer Petroleum is liable from May 14, 2001 (15 months after the February 14, 2000 inspection)-November 21, 2005, Defendant Tri-State is liable from November 22, 2005-April 4, 2008, and Defendant Twin States is liable from April 5, 2008-present for injunctive relief and civil penalties of up to $11,000 per tank per day of violation for violations occurring from May 14, 2001 through January 12, 2009 and up to $16,000 per tank per day for violations occurring after January 12, 2009.

## SIXTH CLAIM FOR RELIEF

### Failure to Comply with Financial Responsibility Requirements

66.     The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against all Defendants.

67. Pursuant to ALA. ADMIN. CODE r. 335-6-15-.46 (1994), which adopted by reference 40 C.F.R. §§ 280.90 through 280.112, Defendants are subject to financial responsibility for taking corrective action and for compensating third parties for bodily injury or property damage from accidental releases from the USTs.

68. On June 13, 2000, ADEM notified Bessemer Petroleum that it was no longer eligible for coverage under the Alabama Tank Trust Fund.

69. Since at least June 13, 2000, Defendants have failed to demonstrate any form of financial responsibility for the USTs at the Facility as required by 40 C.F.R. Part 280, Subpart H and ALA. ADMIN. CODE r. 335-6-15-.46 (1994), in violation of ALA. ADMIN. CODE r. 335-6-15-.46 (1994).

70. Pursuant to RCRA § 9006(a) and (d), 42 U.S.C. § 6991e(a) and (d), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Bessemer Petroleum is liable from at least June 13, 2000-November 21, 2005, Defendant Tri-State is liable from November 22, 2005-April 4, 2008, and Defendant Twin States is liable from April 5, 2008-present for injunctive relief and civil penalties of up to $11,000 per tank per day of violation for violations occurring from June 13, 2000 through January 12, 2009, and up to $16,000 per tank per day for violations occurring after January 12, 2009.

### SEVENTH CLAIM FOR RELIEF

<u>Failure to Comply with EPA's RCRA Section 7003 Administrative Order</u>

71. The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against Defendant Bessemer Petroleum.

72. RCRA § 7003(a), 42 U.S.C. § 6973(a), enables the Administrator to issue an order against any person who is responsible for the past or present handling of solid or hazardous waste that may present an imminent and substantial endangerment to human health, or the environment.

73. On July 24, 2008, EPA issued a RCRA § 7003 Administrative Order to Bessemer Petroleum, which became effective ten days after receipt of the Order. Jack Gordon acknowledged receipt of the 7003 Order on behalf of Bessemer Petroleum on August 25, 2008. Pursuant to this 7003 Order, Bessemer Petroleum was required, in its capacity as a past owner/operator of the Facility, to begin performing certain tasks by September 4, 2008.

74. To date, Defendant Bessemer Petroleum has failed to fully comply with the 7003 Order, in violation of RCRA § 7003(b), 42 U.S.C. § 6973(b).

75. Pursuant to RCRA § 7003(b), 42 U.S.C. § 6973(b), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Bessemer Petroleum is liable, in its capacity as past owner/operator of the Facility, for injunctive relief and civil penalties of up to $6,500 per day for violations occurring from September 4, 2008 through January 12, 2009, and up to $7,500 per day for violations occurring after January 12, 2009.

## EIGHTH CLAIM FOR RELIEF

### Failure to Comply with EPA's CWA Section 311 Administrative Order

76. The allegations of Paragraphs 1 through 42 above are realleged and fully incorporated herein by reference and apply to these claims against Defendants Bessemer Petroleum and Twin States.

77. Pursuant to CWA § 311(c)(1), 33 U.S.C. § 1321(c)(1), EPA has the authority to remove or arrange for the removal of a discharge or mitigate or prevent a substantial threat of a discharge of oil into or on navigable waters.

78. On August 12, 2010, EPA issued a CWA § 311(c) Administrative Order to Defendants Bessemer Petroleum and Twin States, which became effective thirty days after receipt of the Order. Martha Gordon acknowledged receipt of the Order as the Register Agent for and President of Bessemer Petroleum on October 4, 2010. M.J. Bobinger acknowledged receipt of the Order as the Registered Agent for Twin States on September 28, 2010. Pursuant to this Order, Defendant Bessemer Petroleum was required to begin performing certain tasks by October 21, 2010, and Defendant Twin States was required to begin performing certain tasks by October 28, 2010. To date, neither Bessemer Petroleum nor Twin States has responded to the 311(c) Order, and the deadline for such responses and compliance has passed.

79. Pursuant to CWA § 311(b)(7)(B), 33 U.S.C. § 1321(b)(7)(B), and the Civil Monetary Penalty Inflation Adjustment Rule, Defendant Bessemer Petroleum is liable for civil penalties of up to $37,500 per day for Bessemer Petroleum's violations occurring after October 21, 2010. Defendant Twin States is liable for civil penalties of up to $37,500 per day for Twin States' violations occurring after October 21, 2010.

## INJUNCTIVE RELIEF

80. Unless restrained by order of this Court, one or more of the violations described above are likely to continue or recur.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the State of Alabama, request that the Court:

a. Award the United States and the State of Alabama injunctive relief and civil penalties against Bessemer Petroleum for the violations referenced above occurring during the time that Bessemer Petroleum owned and/or operated the Facility and/or the USTs at the Facility.

b. Award the United States and the State of Alabama injunctive relief and civil penalties against Tri-State for the violations referenced above occurring during the time that Tri-State owned and/or operated the Facility and/or the USTs at the Facility.

c. Award the United States and the State of Alabama injunctive relief and civil penalties against Twin States for the violations referenced above occurring during the time that Twin States owned and/or operated the Facility and/or the USTs at the Facility.

d. Order Defendant Bessemer Petroleum to fully comply with EPA's July 24, 2008 Administrative Order issued pursuant to Section 7003 of RCRA.

e. Order Defendants Bessemer Petroleum and Twin States to fully comply with EPA's August 12, 2010 Administrative Order issued pursuant to Section 311(c) of the CWA.

Respectfully submitted,

**FOR THE UNITED STATES:**

/s/ Ignacia S. Moreno
IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JOYCE WHITE VANCE
United States Attorney
Northern District of Alabama


_/s/ Edward Q. Ragland_
EDWARD Q. RAGLAND
Assistant United States Attorney
1801 4th Avenue North
Birmingham, AL 35203
(205) 244-2109 (Office)
205 244 2181 (Facsimile)
Bar No. 7291
Ed.Ragland@usdoj.gov


OF COUNSEL:
COLLEEN MICHUDA
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4

**FOR THE STATE OF ALABAMA:**

LUTHER STRANGE
ATTORNEY GENERAL

ANTHONY TODD CARTER
Associate General Counsel
ADEM Office of General Counsel
P.O. Box 301463
Montgomery, AL 36130-1463
(334) 271-7977 (Office)
(334) 394-4332 (Facsimile)
Bar No. CAR126
atcarter@adem.state.al.us

20