FILED

2014 Nov-05  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF ALABAMA )<br><br>)<br>)<br>Plaintiffs,                                    )<br>)<br>v.                                           )<br>)<br>)<br>BESSEMER PETROLEUM, INC.;                      )<br>TRI-STATE PETROLEUM PRODUCTS, LLC;             )<br>and TWIN STATES PETROLEUM PRODUCTS,            )<br>LLC                                          )<br>)<br>Defendants.                                 )<br>) | Civil Action No. 2:12-cv-01141-RDP |

**CONSENT DECREE**

## TABLE OF CONTENTS

I.      DEFINITIONS ................................................................................ - 2 -

II.     JURISDICTION AND VENUE ...................................................... - 4 -

III.    PARTIES BOUND AND NOTICE OF TRANSFER ...................... - 5 -

IV.     OBJECTIVES ................................................................................ - 7 -

V.      GENERAL PROVISIONS ............................................................. - 7 -

VI.     WORK TO BE PERFORMED ....................................................... - 8 -

VII.    AGENCY REVIEW AND APPROVAL OF DOCUMENT SUBMITTALS ................ - 9 -

VIII.   SAMPLE AND DOCUMENT AVAILABILITY AND QUALITY ........................... - 12 -

IX.     FINANCIAL ASSURANCE ......................................................... - 14 -

X.      ACCESS ...................................................................................... - 15 -

XI.     REIMBURSEMENT OF PAST COSTS ...................................... - 17 -

XII.    CIVIL PENALTY ........................................................................ - 17 -

XIII.   FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT DECREE ........ - 19 -

XIV.    DISPUTE RESOLUTION ............................................................ - 22 -

XV.     INDEMNIFICATION ................................................................... - 25 -

XVI.    FORCE MAJEURE ...................................................................... - 26 -

XVII.   RESERVATION OF RIGHTS ...................................................... - 28 -

XVIII.  COVENANT OF PLAINTIFFS .................................................... - 30 -

XIX.    COVENANT OF DEFENDANTS ................................................ - 31 -

XX.     MODIFICATION ......................................................................... - 32 -

XXI.    RETENTION OF JURISDICTION ............................................... - 32 -

XXII.   COSTS ......................................................................................... - 32 -

XXIII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ............................- 32 -

XXIV.   NOTICES AND SUBMISSIONS ............................................................- 33 -

XXV.   TERMINATION......................................................................................- 34 -

APPENDIX A          MAPS OF FACILITY

APPENDIX B          STATEMENT OF WORK

WHEREAS, Plaintiffs, the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") and the Commandant of the United States Coast Guard ("Coast Guard"), and the State of Alabama, on behalf of the Alabama Department of Environmental Management ("ADEM"), filed their Complaint asserting claims against Bessemer Petroleum, Inc. ("Bessemer Petroleum"), Tri-State Petroleum Products, LLC ("Tri-State"), and Twin States Petroleum Products, LLC ("Twin States") (collectively, "the Defendants"), pursuant to Sections 9006 and 7003(b) of the Resource Conservation and Recovery Act, as amended ("RCRA"), 42 U.S.C. §§ 6991e and 6973(b), Section 1002 of the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2702, and Section 311 of the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), 33 U.S.C. § 1321;

WHEREAS, such claims relate to alleged violations of the state and federal underground storage tank ("UST") regulations promulgated at ADEM Admin. Code Chapter 335-6-15 and 40 C.F.R. Part 280, alleged violations of a federal RCRA § 7003 Order and a federal CWA § 311(c) Order; and removal costs incurred by the United States in responding to a discharge or a threat of a discharge of oil, pertaining to a facility located at 2701 8th Avenue North, Bessemer, Jefferson County, Alabama 35021;

WHEREAS, Defendant Bessemer Petroleum is an Alabama corporation, created on or about October 2, 1992; Defendant Tri-State is a Mississippi limited liability company, created on or about November 15, 2005; and Defendant Twin States is a Mississippi limited liability company, created on or about February 25, 2008;

WHEREAS, the Parties, without the necessity of trial or adjudication of any issues of fact or law, and without any admission of liability or of any factual or legal allegations (except as provided below), consent to entry of this Consent Decree resolving all issues in this action,

1

including all claims for civil penalties and injunctive relief for the violations alleged in the Plaintiffs' Complaint, and the recovery of past costs incurred in response to the discharge or substantial threat of a discharge of oil at the facility; and

WHEREAS, the Parties agree and the Court finds that this Consent Decree has been negotiated by the Parties in good faith, that the implementation of this Consent Decree will avoid prolonged and complicated litigation, and that the Consent Decree is fair, reasonable and in the public interest.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

## I.  DEFINITIONS

1.   Unless otherwise expressly stated, the terms used in this Consent Decree that are defined in RCRA, 42 U.S.C. §§ 6901 et seq., the CWA, 33 U.S.C. §§ 1251 et seq., OPA, 33 U.S.C. §§ 2701 et seq., or in their implementing regulations, or in the authorized Alabama UST regulations at ADEM Admin. Code Chapter 335-6-15 (40 C.F.R. Part 280), shall have the meaning set forth in such definitions.

2.   Whenever the terms listed below are used in this Consent Decree or any attachments hereto, the following definitions shall apply:

"ADEM" shall mean the Alabama Department of Environmental Management, and any successor environmental departments or agencies of the State of Alabama.

"Coast Guard" shall mean the United States Coast Guard and any successor departments, agencies, or instrumentalities of the United States.

"Consent Decree" shall mean this Consent Decree and all attachments hereto, and all modifications.   In the event of a conflict between this Consent Decree and any attachment, this Consent Decree shall control.

2

"CWA" shall mean the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. (also known as the Clean Water Act).

"CWA § 311(c) Order" shall mean the CWA Administrative Order, Docket No. CWA-04-2010-5250, dated August 12, 2010, issued to Defendants Bessemer Petroleum and Twin States.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. "Working Day" shall mean a day other than a Saturday, Sunday or federal holiday.   In computing any period of time prescribed or allowed under this Consent Decree, the provisions of Rule 6 of the Federal Rules of Civil Procedure, shall apply.

"Effective Date of this Consent Decree" shall be the date it is entered by the Court.

"EPA" shall mean the United States Environmental Protection Agency, and any successor departments, agencies, or instrumentalities of the United States.

"Facility" shall mean the abandoned bulk fuel distribution and storage facility located at 2701 8th Avenue North, Bessemer, Jefferson County, Alabama 35021, which is approximately four (4) acres in size, and depicted generally on the maps attached as Appendix A.

"OPA" shall mean the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 et seq.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States of America, the State of Alabama, Bessemer Petroleum, Tri-State, and Twin States.

"Past Costs" shall mean all removal costs, including, but not limited to, direct and indirect costs, that the United States or its contractors have incurred in responding to the discharge or threat of a discharge of oil from the Facility.

3

"Plaintiffs" shall mean the United States of America and the State of Alabama.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"RCRA § 7003 Order" shall mean the RCRA Administrative Order, Docket No. RCRA-04-2008-4010, dated July 24, 2008, issued to Defendant Bessemer Petroleum.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"United States" shall mean the United States of America, including its agencies, departments, and instrumentalities, including the United States Environmental Protection Agency and the United States Coast Guard.

"Work" shall mean all activities Defendants are required to perform under this Consent Decree, or any attachment hereto, including, but not limited to, the Statement of Work in Appendix B, to meet the objectives of this Consent Decree as set forth in Section IV (Objectives).

## II.   JURISDICTION AND VENUE

3.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367; RCRA §§ 7003(b) and 9006(a)(1), 42 U.S.C. §§ 6973(b) and 6991e(a)(1); CWA §§ 311(b)(7)(E), 311(f)(2) and 311(n), 33 U.S.C. §§ 1321(b)(7)(E), 1321(f)(2) and 1321(n); and OPA § 1017(b), 33 U.S.C. § 2717(b).   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a); RCRA §§ 7003(b) and 9006(a)(1), 42 U.S.C. §§ 6973(b) and 6991e(a)(1); CWA § 311(b)(7)(E), 33 U.S.C. § 1321(b)(7)(E); and OPA § 1017(b), 33 U.S.C. §§ 2717(b).   The Complaint states claims upon which the Court can grant relief.

4.   Solely for the purposes of this Consent Decree and the underlying Complaint, Defendants waive all objections and defenses that they may have to the jurisdiction of the Court or

4

to venue in this District.    Defendants shall not challenge the terms of this Consent Decree or this

Court's jurisdiction to enter, enforce, modify, or terminate this Consent Decree.

### III.    PARTIES BOUND AND NOTICE OF TRANSFER

5.    This Consent Decree shall apply to and be binding upon the United States, the State of

Alabama, and upon Defendants and their officers, agents, successors, assigns and all other persons

acting on Defendants' behalf or in active concert with Defendants with regard to the Facility.

6.    Each party certifies that its undersigned representative is fully authorized by that party

to enter into the terms and conditions of this Consent Decree, to execute it on behalf of that party,

and to legally bind the party.

7.    Unless otherwise agreed to by the United States and the State of Alabama, no change in

ownership, corporate, or partnership status relating to the Facility, or conveyance of title,

easement, or other interest in the Facility, including but not limited to any lease or transfer of assets

or real or personal property, will alter Defendants' obligation to comply with the requirements of

this Consent Decree or Defendants' liability for compliance by any successor or assign of any

defendant in the event such successor or assign fails to perform the obligations required by this

Consent Decree.    For such period of time as this Consent Decree is in force, any deed, title, or

other instrument of conveyance utilized by any defendant with respect to the Facility shall contain

a notice that the Facility is the subject of this Consent Decree, setting forth the case caption and

civil action number, and the Court having jurisdiction.    Upon termination of this Consent Decree,

Defendant Twin States (or the current owner of the Facility at the time) will be entitled to record an

instrument noting that the Consent Decree has been terminated.

8.    Defendants shall notify the United States and the State of Alabama as set forth in

Section XXIV (Notices and Submissions) prior to a change in the operational or ownership status

5

of any tank, including any UST, or any portion of the Facility, including but not limited to the conveyance of title, easement, leasehold or other interest.   This notice shall also include a description of both the current and expected future activities (to the extent known by Defendants) on that portion of the Facility to be conveyed, leased or otherwise alienated.   Defendants shall also provide a copy of this Consent Decree to the grantee prior to any such conveyance.

9.   Within five (5) days of the Effective Date of this Consent Decree, or at the time a contractor is obtained to perform or monitor the Work required by this Consent Decree or its attachments, Defendants shall provide to each contractor, and to each person representing Defendants with respect to the Facility or the Work, a copy of all sections of this Consent Decree or attachments relevant to that contractor's or representative's employment, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree and its attachments.   Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.

10.   Notwithstanding any retention of contractors, subcontractors or agents to perform or monitor any Work required under this Consent Decree, Defendants shall be responsible for ensuring that all Work is performed in accordance with the requirements of this Consent Decree. In any action to enforce this Consent Decree or to obtain stipulated penalties hereunder, Defendants shall not assert as a defense the failure of their employees, servants, agents, assigns, contractors or subcontractors to take actions necessary to comply with this Consent Decree, unless Defendants establish, pursuant to the procedures set forth in Section XIV (Dispute Resolution) below, that such failure resulted from a "force majeure" event as defined in Section XVI (Force Majeure) of this Consent Decree.

## IV.   OBJECTIVES

11.   The purposes of the United States, the State of Alabama, and Defendants in entering into this Consent Decree are:

a.   to resolve all pending claims as set forth in the underlying Complaint according to the terms and subject to the reservations set forth herein, without admission of fact or liability or the necessity of further litigation;

b.   to assure that Defendants comply with the applicable requirements of RCRA, OPA, and the CWA, all corresponding state laws, and all applicable implementing regulations under the foregoing statutes;

c.   to assure that Defendants comply with the requirements of the RCRA § 7003 and CWA § 311(c) Orders;

d.   to assure that Defendants conduct site assessment and remediation activities (if necessary) to address environmental contamination that exceeds applicable screening and/or cleanup levels (as approved by ADEM) at the Facility;

e.   to assure that Defendants permanently close the USTs at the Facility in accordance with ADEM Admin. Code Chapter 335-6-15 (40 C.F.R. Part 280);

f.   to assure that Defendants permanently close or remove all aboveground storage tanks ("ASTs") at the Facility;

g.   to assure that Defendants reimburse the United States for its Past Costs; and

h.   to provide for the payment of a civil penalty by Defendants.

## V.   GENERAL PROVISIONS

12.   <u>Compliance With Applicable Laws</u>.   All activities undertaken by Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all

7

applicable federal, state and local laws and regulations, or permits, including, without limitation, federal or state laws and regulations governing the permanent closure of UST systems.

13.   <u>Permits</u>.   If any portion of the Work requires a federal, state or local permit or approval, Defendants shall submit timely and complete applications, shall take all other actions required by law to obtain such permits or approvals, and shall use best efforts to take all other actions necessary to obtain all such permits or approvals.

14.   Defendants may seek relief under the provisions of Section XVI (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from the lack of a permit required for the Work, provided that Defendants have complied with the preceding paragraph and used due diligence to obtain such permit.

15.   This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state or local statute or regulation.

## VI.   WORK TO BE PERFORMED

16.   Defendants shall perform the following Work as outlined below:

a.   <u>Selection of Supervising Contractor</u>.   Defendants have selected ARCADIS U.S., Inc. as their Supervising Contractor for the Work required under the provisions of this Consent Decree.   If Defendants propose to change their Supervising Contractor, they shall give ten (10) days advance notice of such change in qualified Supervising Contractor to EPA and ADEM.

b.   Within thirty (30) days of entry of this Consent Decree by this Court, Defendants shall submit a work plan(s), including a detailed schedule for performing the activities outlined in the Statement of Work attached as Appendix B, and a schedule for the submission of progress reports.

8

c.   The proposed work plan(s) shall include a Health and Safety Plan, which shall ensure the protection of workers and the public during the performance of all Work under this Consent Decree.

d.   Defendants shall commence implementation of the work plan(s) within fifteen (15) days of approval of such work plan(s) in accordance with Paragraph 17 below, unless an alternate date is specified in the applicable work plan, in which case, such alternate date shall control.   Defendants shall perform all Work in accordance with the schedule contained in the approved work plan(s).

## VII.   AGENCY REVIEW AND APPROVAL OF DOCUMENT SUBMITTALS

17.   As provided for in this Consent Decree, EPA and ADEM shall review all draft and final work plans, reports, schedules, and other documents submitted to EPA and ADEM for review and, if required, approval pursuant to this Consent Decree.   If approval is required, EPA, after consultation with ADEM, shall notify Defendants in writing of the agencies' approval, disapproval or modification of such plans, reports, schedules, or other documents, or any part thereof.   ADEM shall have final approval authority over any work plan or portion of a work plan specifically addressing the closure and assessment of USTs per ADEM Admin. Code Chapter 335-6-15 (40 C.F.R. Part 280).   EPA, in consultation with ADEM, shall have final approval authority over any work plan or portion of a work plan addressing the remainder of the Work outlined in the Statement of Work.   In the event of approval of a work plan, Defendants shall commence implementation of the work plan within fifteen (15) days of such approval, unless an alternate date is specified in the applicable work plan, in which case, such alternate date shall control, and shall complete implementation of the work plan in accordance with the schedule set forth in the approved work plan.   In the event of any disapproval, EPA's written notice will

9

explain the reasons for the disapproval.

18.   Within fifteen (15) days of receipt of EPA's disapproval of any work plan, report, schedule or other document required to be submitted under this Consent Decree, or within such other time as provided in the disapproval document or this Consent Decree, Defendants shall amend and submit a revised work plan, report, schedule or other document to EPA and ADEM. In the event Defendants do not timely amend, revise or submit a plan addressing and correcting the matters in the disapproved document, or in the event Defendants' resubmission is still deficient: (1) Defendants shall be subject to stipulated penalties under Section XIII (Failure to Comply with Requirements of Consent Decree) of this Consent Decree; and (2) EPA, in consultation with ADEM, may unilaterally modify the work plan(s).   Subject to the Dispute Resolution procedures of this Consent Decree, Section XIV, Defendants shall commence implementation of the revised or modified work plan(s) within fifteen (15) days of receipt of EPA's approval or unilateral modification of a work plan, unless the specific provision governing implementation of the work plan provides for a longer time period, in which case the longer time period shall govern.   If Defendants fail to implement the modified work plan, Defendants shall be subject to stipulated penalties under Section XIII of this Consent Decree.   A deficient work plan that is resubmitted with the same or substantially similar deficiency shall be deemed to have never been submitted for purposes of calculating stipulated penalties.

19.   Documents regarding the Work to be performed under this Consent Decree, including reports, approvals, disapprovals and other correspondence to be submitted pursuant to this Consent Decree, shall be sent to the following Project Coordinators, or to any other recipient or address that Defendants, EPA, or ADEM hereafter agree upon in writing:

      a.   one hard copy and one electronic copy of all documents to be submitted to EPA

should be sent to:

> Mallory Miller
> UST Section
> U.S. Environmental Protection Agency, Region 4
> 61 Forsyth Street, SW
> Atlanta, Georgia 30303
> miller.mallory@epa.gov
> Phone: (404) 562-8590
>
>   and
>
> Matthew Huyser
> On-Scene Coordinator
> U.S. Environmental Protection Agency, Region 4
> 61 Forsyth Street, SW
> Atlanta, Georgia 30303
> huyser.matthew@epa.gov
> Phone: (404) 562-8934

  b.  one hard copy and one electronic copy of all documents to be submitted to

ADEM should be sent to:

> Jim Heller
> UST Corrective Action Section
> Alabama Department of Environmental Management
> 1400 Coliseum Boulevard
> Montgomery, Alabama 36110-2400
> jah@adem.state.al.us
> Phone: (334) 270-5658

  c.  Documents to be submitted to Defendants should be sent to:

> Keith W. Turner
> Watkins & Eager, PLLC
> 400 East Capitol Street
> Jackson, Mississippi 39201
> kturner@watkinseager.com
> Phone: (601) 965-1958

20.  All documents submitted by Defendants to EPA and ADEM for review and approval

or modification pursuant to this Consent Decree shall include the following certification

11

statement:

> "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.   Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.   I further certify, to the best of my knowledge and belief, that this document meets the objectives and requirements of the Consent Decree entered among the United States, the State of Alabama, Bessemer Petroleum, Tri-State, and Twin States, in connection with the Civil Action styled *United States of America and State of Alabama v. Bessemer Petroleum, Inc., Tri-State Petroleum Products, LLC, and Twin States Petroleum Products, LLC*, Docket Number 2:12-cv-01141-RDP, in the United States District Court for the Northern District of Alabama.   I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## VIII.   SAMPLE AND DOCUMENT AVAILABILITY AND QUALITY

21.   All sampling undertaken pursuant to this Consent Decree shall be performed in a manner consistent with EPA's "Field Branches Quality System and Technical Procedures," available at http://www.epa.gov/region4/sesd/fbqstp/index.html, or the "Alabama Environmental Investigation and Remediation Guidance," (revised September 2005), available at http://www.adem.state.al.us/MoreInfo/pubs/AEIRGInvestigation.pdf, as appropriate. The name(s), address, telephone number, and contact person of each analytical laboratory Defendants propose to use must be specified in the applicable work plan. Defendants shall ensure that

laboratories used by Defendants for analysis perform such analysis according to the latest approved edition of "Test Methods for Evaluating Solid Waste, Physical/Chemical Methods" (SW-846, Third Edition, as amended by Final Update IV, January 2008), or other methods deemed satisfactory to EPA and ADEM.   If methods other than EPA or ADEM methods are to be used, Defendants shall specify and submit all such protocols for approval in the applicable work plan. EPA, in consultation with ADEM, may reject any data that does not meet the requirements of the approved work plan, or EPA or ADEM analytical methods, and may require re-sampling and additional analysis.   Defendants shall develop a Quality Assurance Project Plan ("QAPP") for all sampling and analysis conducted under this Consent Decree. The applicable work plan shall contain quality assurance/quality control ("QA/QC") and chain of custody procedures for all sampling, monitoring, and analytical activities.   Any deviations from the QA/QC and chain of custody procedures in any approved work plan must be approved by EPA and ADEM prior to implementation; must be documented, including the reasons for the deviations; and must be reported in the applicable report.

22.   Defendants shall make available to EPA and ADEM the results of all sampling and/or tests or other data generated by or on behalf of Defendants during implementation of this Consent Decree.   Upon request, EPA and ADEM will make available to Defendants the results of all sampling and/or tests or other data generated by or on behalf of EPA or ADEM during implementation of this Consent Decree.

23.   Unless otherwise provided for in this Consent Decree, or a work plan approved hereunder, or unless otherwise agreed upon by the Parties, Defendants shall notify EPA and ADEM pursuant to Paragraph 19 hereof at least seven (7) days prior to engaging in any field activities undertaken pursuant to implementation of this Consent Decree, such as well drilling,

installation of equipment, or sampling.   This notification shall be sent by electronic mail to the

EPA and ADEM Project Coordinators as identified in Paragraph 19 above.   At the request of EPA

or ADEM, Defendants shall provide split samples to EPA or ADEM, or allow EPA or ADEM, or

their authorized representatives, to take samples or split or duplicate samples of any samples

collected by, or on behalf of, Defendants pursuant to the implementation of this Consent Decree.

24.   Defendants agree to preserve and make available to EPA and ADEM during the

pendency of this Consent Decree, and for a minimum of three (3) years after its termination, all

records and documents in Defendants' possession, or in the possession of their divisions,

employees, agents, consultants or contractors, which relate to the performance of the obligations

under this Consent Decree.   At least sixty (60) days prior to destruction or disposal of any such

records, Defendants shall notify EPA and ADEM and make such records available to EPA and

ADEM for inspection or retention.

## IX.   FINANCIAL ASSURANCE

25.   Defendants shall establish and maintain financial assurance in an amount sufficient

to cover the costs of the Work identified in the attached Statement of Work in Appendix B,

including UST closure, assessment and remediation (as necessary) at the Facility, in the form of an

escrow account established within thirty (30) days after the Effective Date of this Consent Decree

and funded with an amount equal to the initial cost estimate covering the Work; or in the form of a

trust fund; surety bond; letter of credit; insurance; or financial test and corporate guarantee, or a

combination of these, as set forth in ADEM Admin. Code r. 335-6-15-.43 (40 C.F.R. Part 280,

Subpart H).   If Defendants choose an escrow account as their financial assurance mechanism,

Defendants shall submit notice to Plaintiffs of the establishment and initial funding of the escrow

account, information regarding the escrow agent, and monthly statements documenting the draws

14

for payments to consultants and contractors for Work performed during the previous month.   The initial cost estimate covering the Work is due with the submission of the applicable work plan. Revised cost estimates must be submitted with any proposed modifications that would increase the cost estimates, or at least annually, and the financial assurance instrument must be updated accordingly to reflect the increased cost estimate.   If EPA, in consultation with ADEM, does not agree with Defendants' cost estimates, EPA will notify Defendants in writing of the determination. Defendants shall then have thirty (30) days from EPA's notification to resubmit additional information or corrected documentation.   All submittals in response to this paragraph shall be submitted in duplicate to the EPA and ADEM Project Coordinators identified in Paragraph 19 above.

## X.   ACCESS

26.   Defendants agree to provide EPA and ADEM and their representatives, including contractors, access at all reasonable times, to enter and move about all property at the Facility, for any purpose relating to the implementation, monitoring or enforcement of this Consent Decree, including, without limitation: interviewing personnel involved in the field work at the Facility; inspecting records, operating logs and contracts related to the implementation, monitoring or enforcement of this Consent Decree; reviewing Defendants' progress in carrying out the terms of this Consent Decree; conducting such sampling and tests as EPA or ADEM or their representatives deem appropriate for implementation, monitoring or enforcement of this Consent Decree; using a camera, sound recording, or other documentary type equipment; and verifying the reports and data that Defendants submit to EPA and ADEM.   Defendants shall permit such persons to inspect and copy all records, files, photographs, computer records and other writings, including all sampling and monitoring data, required to implement, monitor or enforce this Consent Decree.   In the event

15

Defendants believe that information, data or other material accessible to EPA or ADEM under this Consent Decree contains confidential business information, Defendants shall be entitled to all confidential business information protections available under applicable law or regulation, and EPA and ADEM shall handle such designated material in accordance with such law.

27.   To the extent that Work required by this Consent Decree must be done on property which Defendants do not currently own or control or have access to, Defendants shall use best efforts, including the payment of reasonable sums of money in consideration of access, to obtain site access agreements for themselves and their contractors, and for EPA or ADEM and their authorized representatives and contractors, from the owner(s) of such property.   Defendants shall seek to obtain such access agreements as expeditiously as practicable, to prevent any delays in the Work required under this Consent Decree.   If Defendants cannot, despite their best efforts, secure access to property where Work is required under this Consent Decree, within thirty (30) days after Defendants' initial request for access to such property, Defendants shall, within five (5) days thereafter, again request access in a certified letter, return receipt requested, to the property owner. If an agreement for access to such property is not obtained within thirty (30) days after Defendants' subsequent request for access, Defendants shall notify EPA and ADEM regarding both the efforts undertaken to secure an access agreement and the reasons for Defendants' inability to obtain such an agreement.   In the event that EPA or ADEM obtains access for Defendants, Defendants shall undertake the Work approved by EPA, in consultation with ADEM, pursuant to this Consent Decree on such property, and shall reimburse the EPA and/or ADEM for all reasonable costs necessary to obtain the access required for Defendants to comply with the provisions of this Consent Decree.

28.   Nothing in this Section limits or otherwise affects EPA's or ADEM's right of access and entry pursuant to any applicable law, including, but not limited to, Sections 3007 and 9005 of RCRA, 42 U.S.C. §§ 6927 and 6991d, Sections 308 and 311(m)(2) of the CWA, 33 U.S.C. § 1318 and 1321(m)(2), and other corresponding state laws.

## XI.   REIMBURSEMENT OF PAST COSTS

29.   Within thirty (30) days of the Effective Date of this Consent Decree, Defendants shall pay to the United States $239,285.47 in reimbursement of Past Costs.

30.   Payment shall be made by FedWire Electronic Funds Transfer ("EFT" or wire transfer), to the U.S. Department of Justice, referencing the Coast Guard's Federal Project Number ("FPN") E09402 and the U.S. Attorney's Office ("USAO") Number 2011V01366, in accordance with instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of Alabama to Defendants.   Any EFTs received at the U.S. DOJ lockbox bank after 4:00 p.m. (Eastern Time) will be credited on the next business day.   Notice that such payment has been made shall be sent on the same day to: (1) the Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, P.O. Box 7611, Ben Franklin Station, Washington, D.C. 20044 (re: DOJ File No. 90-7-1-09700); (2) the United States Attorney's Office, Northern District of Alabama, attention Lane H. Woodke, Chief, Civil Division, United States Attorney's Office, Northern District of Alabama, 1801 4th Avenue N., Birmingham, Alabama 35203 (re: 2011V01366); and (3) the United States Coast Guard, National Pollution Funds Center, 4200 Wilson Boulevard, Suite 1000, Arlington, Virginia 22203 (re: FPN E09402).   All funds shall be deposited into the Oil Spill Liability Trust Fund.

## XII.   CIVIL PENALTY

31.   Defendants shall pay a civil penalty in the amount of Ten Thousand Dollars

17

($10,000) to the United States in settlement of the claims specifically set forth in the Complaint in this matter.   This civil penalty shall only be for those violations through the date of lodging of this Consent Decree.

32.   Payment of this civil penalty shall be made by EFT or wire transfer to the U.S. Department of Justice within thirty (30) days of the Effective Date of this Consent Decree, referencing the USAO No. 2011V01366, in accordance with instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of Alabama to Defendants.   Any EFTs received at the U.S. DOJ lockbox bank after 4:00 p.m. (Eastern Time) will be credited on the next business day.   Notice that such payment has been made shall be sent on the same day by electronic mail to: acctsreceivable.CINWD@epa.gov; and by U.S. mail to: (1) EPA Region 4, RCRA Division, Chief, UST Section, RUST Branch, 61 Forsyth Street, S.W., Atlanta, Georgia 30303; (2) the Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, P.O. Box 7611, Ben Franklin Station, Washington, D.C. 20044 (re: DOJ File No. 90-7-1-09700); and (3) the United States Attorney's Office, Northern District of Alabama, attention Lane H. Woodke, Chief, Civil Division, United States Attorney's Office, Northern District of Alabama, 1801 4th Avenue N., Birmingham, Alabama 35203.   The notice shall reference the USAO Number listed above, the case name, court, and docket number.

33.   Defendants shall pay the sum of Ten Thousand Dollars ($10,000) as a civil penalty to ADEM in settlement of the matters addressed in this Consent Decree.   Payment to ADEM shall be made within thirty (30) days of the Effective Date of this Consent Decree and shall be made by a cashier's check or money order sent to the Office of General Counsel, Alabama Department of Environmental Management, P.O. Box 301463, Montgomery, Alabama 36130-1463. The instrument shall be made payable to the Alabama Department of Environmental Management.

The transmittal letter shall state that the payment is for a civil penalty owed pursuant to the Consent Decree in *United States v. Bessemer Petroleum, Inc., et al.* and shall reference the court and docket number.

34.    This Consent Decree shall be considered an enforceable judgment for the purposes of post-judgment collection in accordance with Rule 69 of the Federal Rules of Civil Procedure and the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3001 et seq.   All payments required under this Consent Decree shall be considered a debt under the FDCPA.

35.    The civil penalty and stipulated penalties provided for in this Consent Decree are penalties within the meaning of 26 U.S.C. § 162(f), and are not tax deductible expenditures for purposes of federal law.

### XIII.   FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT DECREE

36.    Interest on Late Payments.   In the event any payment required by Section XI (Reimbursement of Past Costs), Section XII (Civil Penalty), or Section XIII (Failure to Comply with Requirements of Consent Decree), Paragraphs 37 through 41, is not received when due, interest shall accrue on the unpaid balance through the date of payment.   Interest shall accrue in accordance with 28 U.S.C. § 1961 or 33 U.S.C. § 2705 on any amount overdue.   If interest is due, Defendants shall submit a statement with the payment to the Financial Litigation Unit of the United States Attorney's Office for the Northern District of Alabama setting forth the calculation of interest due.   Personnel from the United States Attorney's Office, Financial Litigation Unit, will advise Defendants in the event such calculation requires adjustment.

37.    Stipulated Penalties.   Defendants shall be liable for stipulated penalties in the amounts set forth below to the United States and the State of Alabama for failure to comply with the requirements of this Consent Decree set forth below, unless excused under Section XVI (Force

Majeure).   "Compliance" by Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan or document approved under this Consent Decree in accordance with all applicable requirements of law, this Consent Decree, and any plans or other documents submitted to and approved by EPA, in consultation with ADEM, pursuant to this Consent Decree, and within the specified time schedules established by and approved under this Consent Decree.

38.   For noncompliance with any of the requirements identified below, the following stipulated penalties shall accrue per violation per day:

| | Period of Noncompliance | | |
| --- | --- | --- | --- |
| | Days 1-30 | Days 31-60 | Over 60 days |
| Failure to timely submit any required work plan | $1,000 | $5,000 | $7,500 |
| Failure to meet deadlines for commencing Work under the Consent Decree or any work plan | $500 | $2,500 | $5,000 |
| Failure to pay civil penalty on time | $10,000 | $10,000 | $10,000 |
| Failure to pay Past Costs on time | $10,000 | $10,000 | $10,000 |
| Failure to pay stipulated penalties on time | $500 | $2,500 | $5,000 |
| Failure to provide financial assurance on time | $500 | $2,500 | $5,000 |
| For any other violation of this Consent Decree | $500 | $2,500 | $5,000 |

20

39.   All penalties shall begin to accrue on the day after complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of correction of the noncompliance, except as provided below.   Nothing herein shall prevent the simultaneous accrual of penalties for separate violations of this Consent Decree.   Defendants shall pay all penalties accruing under this Section within thirty (30) days of the date the United States provides a written demand for payment to Defendants, unless Defendants invoke the Dispute Resolution procedures under Section XIV.

40.   The Plaintiffs may, in the unreviewable exercise of their respective discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

41.   Defendants' total stipulated penalty liability for each violation of the Consent Decree, except for any stipulated penalty that accrues for failure to pay Past Costs on time, shall be divided in half and one half paid to the United States and one half paid to the State of Alabama.   All stipulated penalties to the United States under this Section shall be paid by certified or cashier's check(s) made payable to the "Treasurer of the United States," shall be mailed to the United States Attorney's Office for the Northern District of Alabama, attention Lane H. Woodke, Chief, Civil Division, as set forth in Paragraph 32 above, shall indicate that the payment is for stipulated penalties, shall state the basis for the payment of stipulated penalties, and shall reference USAO No. 2011V01366, and the name and address of the party making payment.   All payments to the State of Alabama under this Section shall be paid by certified or cashier's check(s) made payable to the "Alabama Department of Environmental Management" and mailed as set forth in Paragraph 33 above. Copies of the transmittal letter and check(s) shall be sent to the United States and the State of Alabama as set forth in Section XXIV (Notices and Submissions).   Stipulated penalties that accrue for failure to pay Past Costs on time shall be paid by certified or cashier's check(s)

made payable to the "U.S. Coast Guard – Oil Pollution" and shall be deposited into the Oil Spill Liability Trust Fund.

42.   The penalties set forth in this Section do not preclude the United States or the State of Alabama from pursuing any other remedy or sanction, including contempt sanctions or statutory civil penalties, which may be available by reason of Defendants' failure to comply with any of the requirements of this Consent Decree, and Defendants retain all rights to contest such actions.   The payment of such penalties shall not alter in any way Defendants' obligation to complete performance required under this Consent Decree.

## XIV.   DISPUTE RESOLUTION

43.   Unless otherwise expressly provided for in this Consent Decree, Defendants shall have the right to dispute any decision of the United States or the State of Alabama under this Consent Decree or the attached Statement of Work, and the provisions of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the provisions in this Section shall not apply to actions by the United States or the State of Alabama to enforce the obligations of Defendants that have not been disputed in accordance with this Section.

44.   Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.   The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless such time period is modified by written agreement of the parties to the dispute.   The dispute shall be considered to have arisen when one party sends a written Notice of Dispute to the other party.

45.   In the event that the parties cannot resolve a dispute by informal negotiations under the preceding paragraphs, then the position advanced by the United States, in consultation with the

22

State of Alabama, shall be considered binding unless, within twenty (20) days after the conclusion

of the informal negotiation period,   Defendants invoke the formal dispute resolution procedures

of this Section by serving on the United States and the State of Alabama, as set forth in Section

XXIV (Notices and Submissions), a written Statement of Position on the matter in dispute,

including, but not limited to, any factual data, analysis or opinion supporting that position, any

supporting documentation relied upon by Defendants, and any actions which Defendants consider

necessary to resolve the dispute.

    46.   An administrative record of the dispute shall be maintained by EPA.   The

administrative record shall include the Statement of Position and all of the information provided

by Defendants pursuant to the preceding paragraph, a Statement of Position and information

considered or relied upon by the United States or the State of Alabama, as well as any other

documents relied upon by the United States and the State of Alabama in making the agencies' final

decision pursuant to Paragraph 47.   Where appropriate, the United States and the State of

Alabama shall allow submission of supplemental statements of position, data, reports, or

affidavits, by the parties to the dispute.

    47.   If the United States, in consultation with the State of Alabama, concurs with the

position of Defendants, written notice shall be provided to Defendants.   If the United States, in

consultation with the State of Alabama, does not concur with the position of Defendants, written

notice shall be provided to Defendants setting forth the basis of its decision.   The United States'

decision shall control unless, within fifteen (15) days of receipt of the written determination,

Defendants file a notice of judicial appeal which shall set forth a description of the matter in

dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any,

within which the dispute must be resolved to ensure orderly implementation of this Consent

23

Decree.   The United States, in consultation with the State of Alabama, may file a response to the notice of judicial appeal.

48.   In any such judicial appeal, Defendants shall have the burden of proving on the administrative record that the United States' position is arbitrary and capricious or contrary to law or the provisions of this Consent Decree.   If the Court determines that the United States' position is arbitrary and capricious, or contrary to law or the provisions of this Consent Decree, the Court may grant relief in accordance with applicable principles of law governing review of agency determinations on an administrative record, including but not limited to remanding the dispute for further consideration by the agencies or supplementation of the administrative record as appropriate.

49.   The invocation of formal dispute resolution procedures under this Section shall not of itself extend or postpone any obligation of Defendants under this Consent Decree, but the payment of stipulated penalties with respect to the disputed matter shall be stayed pending resolution of the dispute.   Defendants may request of the United States and the State of Alabama that performance be suspended pending dispute resolution if performance would (a) render moot the matter submitted to dispute resolution or (b) pose a risk to human health or the environment. Notwithstanding the stay of payment, stipulated penalties shall continue to accrue as provided in this paragraph during both informal and formal proceedings to resolve disputes under this Consent Decree.   During the formal administrative dispute resolution process described above, stipulated penalties shall continue to accrue for sixty (60) days after the United States and the State of Alabama receive Defendants' Statement of Position, and for sixty (60) days after any supplementation of the administrative record by Defendants in accordance with Paragraph 46 above.   After the United States issues a written determination in accordance with Paragraph 47

24

above, stipulated penalties shall accrue until resolution of any judicial appeal.   Stipulated

penalties shall be paid within fifteen (15) days after written demand by the United States following

resolution of the dispute by the United States or the Court.   To the extent that Defendants prevail

on the disputed issue, stipulated penalties shall be excused.

50.   Upon resolution of any dispute, whether informally or using the procedures in this

Section, Defendants shall, within thirty (30) days or such other time as the United States may

approve, incorporate the resolution into an amended work plan or procedure and proceed with the

Work according to the amended plan or procedures.

## XV.   INDEMNIFICATION

51.   The United States and the State of Alabama do not assume any liability by entering

into this Consent Decree.   Defendants agree to indemnify, save, and hold harmless the United

States, the State of Alabama , their agencies, departments, officials, agents, employees,

contractors, subcontractors and representatives from any and all claims or causes of action arising

from or on account of acts or omissions of Defendants, their officers, directors, employees,

contractors, subcontractors, receivers, trustees, agents, or assignees, and any other person acting

on their behalf or under their control in carrying out the activities pursuant to this Consent Decree.

Further, Defendants agree to pay the United States and the State of Alabama all costs they incur

including, but not limited to, reasonable attorneys' fees and other expenses of litigation and

settlement arising from, or on account of, claims made against the United States or the State of

Alabama based on acts or omissions of Defendants, their officers, directors, employees, agents,

contractors, subcontractors, and any persons acting on their behalf or under their control, in

carrying out activities pursuant to this Consent Decree.   Neither the United States nor the State of

Alabama shall be held out as a party to any contract entered into by or on behalf of Defendants in

25

carrying out activities pursuant to this Consent Decree.   Neither Defendants nor any such

contractor shall be considered an agent of the United States or the State of Alabama.

52.   Defendants waive all claims against the United States and the State of Alabama for

damages or reimbursement or for set-off of any payments made or to be made to the United States

or the State of Alabama arising from or on account of any contract, agreement, or arrangement

between Defendants and any person for performance of Work on or relating to the Facility,

including, but not limited to, claims on account of construction delays.   In addition, Defendants

shall indemnify and hold harmless the United States and the State of Alabama with respect to any

and all claims for damages or reimbursement arising from or on account of any contract,

agreement, or arrangement between Defendants and any person for performance of Work on or

relating to the Facility, including, but not limited to, claims on account of construction delays.

## XVI.   FORCE MAJEURE

53.   Defendants shall perform the requirements of this Consent Decree in the manner and

within the time limits set forth herein, unless the performance is prevented or delayed by events

which constitute a force majeure.   No stipulated penalties shall accrue for any time period during

which performance is excused or delayed as a result of a force majeure event.   Defendants'

obligation to comply with one or more of the provisions of this Consent Decree shall be deferred to

the extent and for the duration that the delay is caused by a force majeure event.   A "force

majeure" is defined as any event caused by circumstances beyond the control of Defendants, or

any entity subject to control by Defendants, including a contractor or consultant, which delays or

prevents performance of any Work or other action undertaken to fulfill any obligation of

Defendants under this Consent Decree, despite the best efforts under the circumstances of

Defendants, their contractors, or consultants to perform such Work or other action in a timely

26

manner.   The requirement that Defendants exercise "best efforts . . . to fulfill any obligation" includes using best efforts under the circumstances to anticipate any potential force majeure event and best efforts under the circumstances to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the extent reasonably possible under the circumstances. "Force Majeure" shall not apply to any delay due to increased costs or Defendants' financial inability to carry out the provisions of this Consent Decree, to normal precipitation events, or to Defendants' failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits.   For purposes of this Consent Decree, "normal precipitation events" are those which are equal to or less than a twenty-four (24) hour, twenty-five (25) year storm event.

54.   When circumstances are occurring or have occurred that can reasonably be anticipated to cause a delay in achieving any requirement set forth in this Consent Decree, or in any plan developed hereunder within the time allowed, Defendants shall notify EPA and ADEM promptly in writing by electronic mail in accordance with Paragraph 19, and in no event later than 72 hours after Defendants knew or reasonably should have known of the occurrence of such circumstances.   Such notice shall include an estimate of the anticipated length of delay, including necessary demobilization and remobilization, its cause, measures taken or to be taken to minimize the delay, an estimated time table for implementation of such measures, a statement as to whether Defendants are claiming a "force majeure," and the bases for such a claim.   Defendants shall adopt all reasonable measures to avoid or minimize any such delay.   Failure to comply with the notice provision of this Section shall constitute a waiver of Defendants' right to assert force majeure.   Notification of any delay, in and of itself, shall not extend the time allowed for meeting any requirement or excuse the delay or payment of stipulated penalties.

27

55.   If EPA, in consultation with ADEM, agrees that the delay was attributable to a force majeure event, EPA will extend the time for performance of that requirement by a period not greater than the delay resulting from such circumstances, unless the Parties agree that a different time period is acceptable.   Such an extension does not alter the schedule for performance or completion of other tasks required under this Consent Decree, except that EPA may, in consultation with ADEM, extend the time for performance of other tasks under this Consent Decree that EPA and ADEM agree will also necessarily be delayed as a result of the force majeure event.

56.   In the event that EPA, in consultation with ADEM, and Defendants cannot agree as to whether a delay was caused by a force majeure event, or as to the length of the appropriate extension of time, the dispute shall be resolved in accordance with the dispute resolution procedures set forth in Section XIV.   In any such dispute resolution proceeding, Defendants shall have the burden of demonstrating that the event was a "force majeure" event, that the duration of the delay caused by such event is or was reasonable under the circumstances, and that, as a result of the delay, a particular extension period is appropriate.   If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree.

## XVII.   RESERVATION OF RIGHTS

57.   The United States and the State of Alabama expressly reserve all rights and defenses that they may have, including, subject to the provisions of this Consent Decree, the right to disapprove of Work performed by Defendants pursuant to this Consent Decree and to request that Defendants perform tasks in addition to those stated in this Consent Decree, the attachments hereto, or any work plan(s), to the extent that such additional tasks relate to completion of the

28

Work required by this Consent Decree.

58.   The United States and the State of Alabama hereby reserve all statutory and regulatory powers, authority, rights, and remedies, both legal and equitable, to enforce Defendants' obligation to comply with any of the requirements of this Consent Decree.   Except as otherwise provided in Section XVIII (Covenant of Plaintiffs) of this Consent Decree, this Consent Decree shall not be construed as a covenant not to sue, release, waiver or limitation of any rights, remedies, powers and/or authorities, civil or criminal, which the United States or the State of Alabama have under RCRA, OPA, or the CWA, or any other statutory, regulatory or common law enforcement authority of the United States or the State of Alabama.

59.   Except as otherwise provided in Section XVIII (Covenant of Plaintiffs) of this Consent Decree, this Consent Decree and compliance by Defendants with the terms of this Consent Decree, shall not relieve Defendants of their obligation to comply with RCRA, OPA, the CWA, or any other applicable local, state or federal laws, regulations and permits.

60.   This Consent Decree is not intended to be nor shall it be construed as a permit or permit modification.   Except as otherwise provided in this Consent Decree, this Consent Decree does not relieve Defendants of any obligation to obtain and comply with any local, state or federal permits, and the United States and the State of Alabama reserve the right to impose any permit requirement within their authorities.

61.   EPA and ADEM reserve, in accordance with applicable law, the right to halt Work and/or perform any portion of the Work consented to herein or any additional site characterization or response actions as they deem necessary to protect public health and the environment.

62.   Except as otherwise specified in this Consent Decree, Defendants do not waive any right, defense or claim that they may have.

63.   This Consent Decree does not limit or affect the rights of Defendants, the State of Alabama, or the United States with respect to any third parties.

## XVIII.   COVENANT OF PLAINTIFFS

64.   In consideration of the Work that will be performed and the penalties and Past Costs that will be paid by Defendants under the terms of the Consent Decree, and except as specifically provided in this Section XVIII, the United States and the State of Alabama covenant not to sue or to take administrative action against Defendants, their officers, directors and employees, for claims specifically alleged in the Plaintiffs' Complaint.   This covenant not to sue is expressly conditioned upon the complete and satisfactory performance by Defendants of their obligations under this Consent Decree, including Appendix B hereto, and may be voided at any time prior to completion of the Work if Defendants fail to comply with any of the requirements of this Consent Decree.   This covenant not to sue extends only to Defendants, their officers, directors and employees, and does not extend to any other person.

65.   Subject to the covenant not to sue in the preceding paragraph, the State of Alabama and the United States retain all authority and reserve all rights to take any and all actions authorized by law to protect human health and the environment.   Except as otherwise provided herein, the entry of this Consent Decree and Defendants' consent to comply shall not limit or constitute a waiver of any rights or remedies, or otherwise preclude the rights or remedies of the United States or the State of Alabama, and this Consent Decree is without prejudice to the United States' and the State of Alabama's rights and remedies, including but not limited to: (1) the right to pursue remedies available to the United States and the State of Alabama for any violation by Defendants of this Consent Decree, or of any federal or state law, regulation, or permitting condition not specifically alleged in the Complaint and resolved by this Consent Decree; and (2)

30

the rights of the United States and the State of Alabama to pursue any rights or remedies under the statutes they administer.   The United States and the State of Alabama reserve authority to take any action authorized by law if there may be an imminent and substantial endangerment in connection with hazardous waste, hazardous constituents, or other hazardous substances or pollutants and contaminants at or from the Facility.

66.   Nothing in this Consent Decree is intended either to create any rights in or grant any cause of action to any person not a party to this Consent Decree, or to release or waive any claim, cause of action, demand, or defense in law or equity that any party to this Consent Decree may have against any person(s) or entity not a party to this Consent Decree.

67.   Except as provided herein, the Plaintiffs hereby reserve all statutory and regulatory powers, authorities, rights, remedies, both legal and equitable, civil, criminal, or administrative, including those that may pertain to Defendants' failure to comply with any of the requirements of this Consent Decree, RCRA, OPA, or the CWA, against Defendants, their officers and directors.

## XIX.   COVENANT OF DEFENDANTS

68.   Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against Plaintiffs, the United States and the State of Alabama, with respect to the allegations contained in the Complaint, actions or omissions allowed by Section VI (Work to be Performed) herein, and any of the Work required hereunder, or violations of environmental requirements that have been corrected to bring the Facility into compliance with the law.   Defendants hereby covenant not to sue and agree not to assert any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, as defined in Section 101 of the OPA, 33 U.S.C. § 2701. Defendants hereby reserve and retain any defense, cause of action, and right not explicitly waived in this Consent Decree.

31

## XX.   MODIFICATION

69.   Except as specifically provided for herein, there shall be no modifications or amendments of this Consent Decree without written agreement of the Parties to this Consent Decree and approval by this Court.   Minor changes, or changes to the technical provisions set forth in Appendix B, or to any schedule, may be made without approval of the Court, upon written agreement among Defendants and EPA, in consultation with ADEM.

## XXI.   RETENTION OF JURISDICTION

70.   This Court retains jurisdiction over both the subject matter of this Consent Decree and Defendants for the duration of the performance of the terms and provisions of this Consent Decree, including its attachments, for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIV (Dispute Resolution) hereof.

71.   The Parties retain the right to seek to enforce the terms of this Consent Decree and to take any action authorized by federal or state law not inconsistent with the terms of this Consent Decree to achieve or maintain compliance with the terms and conditions of this Consent Decree or otherwise.

## XXII.   COSTS

72.   Each party to this action shall bear its own costs and attorneys' fees in the actions resolved by this Consent Decree.

## XXIII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

73.   This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment and an opportunity for a public meeting in the affected

area in accordance with 28 C.F.R. § 50.7 and 42 U.S.C. § 6973(d).   The United States and the State of Alabama reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate.   Defendants consent to the entry of this Consent Decree without further notice.

74.   If, for any reason, the Court should decline to approve this Consent Decree in the form presented, then this agreement is voidable at the discretion of any party, and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXIV.   NOTICES AND SUBMISSIONS

75.   Except where notice is specifically required to be sent to the Project Managers set forth in Paragraph 19 of this Consent Decree, whenever, under the terms of this Consent Decree, notice is required to be given, or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other party in writing.   Notices may be given by electronic mail, courier, overnight mail, hand delivery, or by U.S. Mail.   All notices and submissions shall be considered effective upon receipt, unless otherwise provided.   Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, the State of Alabama, and Defendants, respectively.

As to the United States:     Lane H. Woodke, Chief, Civil Division
U.S. Attorney's Office, Northern District of Alabama
1801 4th Avenue N.
Birmingham, Alabama 35203

Colleen E. Michuda
Associate Regional Counsel

33

U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, SW
Atlanta, Georgia 30303

As to the State of Alabama:   A. Todd Carter
Office of General Counsel
Alabama Department of Environmental Management
P.O. Box 301463
Montgomery, Alabama 36130-1463

As to Defendants:   Keith W. Turner
Watkins & Eager, PLLC
400 East Capitol Street
Jackson, Mississippi 39201

## XXV.   TERMINATION

76.    This Consent Decree shall terminate upon motion filed by the Plaintiffs after all

actions required to be taken by Defendants pursuant to this Consent Decree, including the Work

required in Section VI and the attachments hereto, have been completed, provided that Defendants

have paid any accrued stipulated penalties and that Defendants have certified in writing that they

are in compliance with all the terms and conditions of this Consent Decree and the attachments

hereto.

77.    Within forty-five (45) days of receiving Defendants' certification of compliance,

Plaintiffs will file a motion with the Court seeking termination of the Consent Decree, unless the

Plaintiffs inform Defendants that they do not believe that compliance has been achieved.   If the

Plaintiffs dispute Defendants' full compliance, this Consent Decree shall remain in effect pending

resolution of the dispute by the Parties or the Court.

IT IS HEREBY ORDERED on this _____ day of _____, 20___, that the foregoing

Consent Decree be entered as an Order of this Court.


_____
United States District Judge

FOR PLAINTIFF
UNITED STATES OF AMERICA:

JOYCE VANCE WHITE
United States Attorney
Northern District of Alabama

Dated: 11/4/14

LANE H. WOODKE
Chief, Civil Division
United States Attorney's Office
1801 4th Avenue North
Birmingham, AL 35203
(205) 244-2107 (Office)
(205) 244-2181 (Facsimile)
Lane.Woodke@usdoj.gov

36

FOR PLAINTIFF
UNITED STATES OF AMERICA (continued):

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources
   Division
U. S. Department of Justice

Dated: _10/27/2014_

ELLEN MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
   Division
U. S. Department of Justice

Dated: _10/27/2014_

WILLIAM A. WEINISCHKE
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 514-4592
Bill.Weinischke@usdoj.gov

37

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Dated: 10/24/14

MARY J. WILKES
Regional Counsel
U. S. Environmental Protection Agency
Region 4
61 Forysth Street, SW
Atlanta, GA 30303-8960

Dated: 10/24/14

COLLEEN E. MICHUDA
Associate Regional Counsel
U. S. Environmental Protection Agency
Region 4
61 Forsyth Street, SW
Atlanta, GA 30303-8960

38

FOR THE UNITED STATES COAST GUARD:


Dated: _10/16/14_____    _W.R. Grawe_____
             W.R. GRAWE
             Acting Director,
             National Pollution Funds Center
             U.S. Coast Guard

FOR THE STATE OF ALABAMA:

LUTHER STRANGE
ATTORNEY GENERAL

Dated: ___10 - 3 - 14___

A.  TODD CARTER (CAR126)
Assistant Attorney General
Alabama Department of Environmental
Management
P.O. Box 301463
Montgomery, Alabama   36130-1463
Telephone: (334) 271-7855
atcarter@adem.state.al.us

FOR DEFENDANT BESSEMER PETROLEUM, INC.:

Dated: _Sept 5, 2014_

_____
JOHN O. GILBERT
Co-Trustee, Carl Jackson Gordon Revocable
   Trust
104 Windsor Court
Ridgeland, MS 39157


Dated: _____

_____
JOHN HERROD
Co-Trustee, Carl Jackson Gordon Revocable
   Trust
P.O. Box 306
Okolona, MS 38860

FOR DEFENDANT BESSEMER PETROLEUM, INC.:


Dated: _____

                            _____
                            JOHN O. GILBERT
                            Co-Trustee, Carl Jackson Gordon Revocable
                               Trust
                            104 Windsor Court
                            Ridgeland, MS 39157


Dated: _9/5/14_

                            _____
                            JOHN HERROD
                            Co-Trustee, Carl Jackson Gordon Revocable
                               Trust
                            P.O. Box 306
                            Okolona, MS 38860

FOR DEFENDANT TRI-STATE PETROLEUM PRODUCTS, LLC:


Dated: _Sept. 5, 2014_        _____
JOHN O. GILBERT
Co-Trustee, Carl Jackson Gordon Revocable
    Trust
104 Windsor Court
Ridgeland, MS 39157


Dated: _____        _____
JOHN HERROD
Co-Trustee, Carl Jackson Gordon Revocable
    Trust
P.O. Box 306
Okolona, MS 38860

FOR DEFENDANT TRI-STATE PETROLEUM PRODUCTS, LLC:

Dated: _____

_____
JOHN O. GILBERT
Co-Trustee, Carl Jackson Gordon Revocable
  Trust
104 Windsor Court
Ridgeland, MS 39157

Dated: _9/5/2014_

_____
JOHN HERROD
Co-Trustee, Carl Jackson Gordon Revocable
  Trust
P.O. Box 306
Okolona, MS 38860

FOR DEFENDANT TWIN STATES PETROLEUM PRODUCTS, LLC:


Dated: ___Sept. 5, 2014___                    _____
                                              JOHN O. GILBERT
                                              Co-Trustee, Carl Jackson Gordon Revocable
                                                Trust
                                              104 Windsor Court
                                              Ridgeland, MS 39157


Dated: _____                         _____
                                              JOHN HERROD
                                              Co-Trustee, Carl Jackson Gordon Revocable
                                                Trust
                                              P.O. Box 306
                                              Okolona, MS 38860

FOR DEFENDANT TWIN STATES PETROLEUM PRODUCTS, LLC:


Dated: _____          _____
                                        JOHN O. GILBERT
                                        Co-Trustee, Carl Jackson Gordon Revocable
                                          Trust
                                        104 Windsor Court
                                        Ridgeland, MS 39157

Dated: _9/5/2014_                       _____
                                        JOHN HERROD
                                        Co-Trustee, Carl Jackson Gordon Revocable
                                          Trust
                                        P.O. Box 306
                                        Okolona, MS 38860

43

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and<br>STATE OF ALABAMA<br><br>Plaintiffs,<br><br>v.<br><br><br>BESSEMER PETROLEUM, INC.;<br>TRI-STATE PETROLEUM PRODUCTS, LLC;<br>and TWIN STATES PETROLEUM PRODUCTS,<br>LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:12-cv-01141-RDP |

## CONSENT DECREE

APPENDIX A        MAPS OF FACILITY



Figure 2
Aerial Map

Bessemer Petroleum
2701 8th Avenue North
Bessemer, Alabama

0                    200
                        Feet



Source:   Geological Survey of Alabama, Bessmer Quadrangle. 2008

**ARCADIS**

Figure 3
Site Layout

Bessemer Petroleum
2701 8th Avenue North
Bessemer, Alabama

0          200
Feet



Legend

☐ Site Boundary

▪▬▪ Fence

— Stormwater Ditch

▨ F1 & F2 Secondary Containment

▦ Roll-Off Containers

▮ Oil-Water Separator

Locations Approximate

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF ALABAMA | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 2:12-cv-01141-RDP ) |
| BESSEMER PETROLEUM, INC.; TRI-STATE PETROLEUM PRODUCTS, LLC; and TWIN STATES PETROLEUM PRODUCTS, LLC | ) ) ) ) ) |
| Defendants. | ) ) |

**CONSENT DECREE**

APPENDIX B        STATEMENT OF WORK

# APPENDIX B
## Statement of Work

1.      Securing the fence perimeter, including repairing any holes in the fence that permit unauthorized access to the facility; securing all gates with locks; inspecting fencing and locks weekly and repairing/replacing fencing/locks as needed to prevent access from unauthorized personnel;

2.      Providing endangerment signs, such as "Danger – Unauthorized Personnel Keep Out," at each entrance and at other locations in sufficient numbers that can be seen from any approach and that are legible from 25 feet away, in English and any other language predominant in the area;

3.      Providing an inventory, with map, of all aboveground storage tanks (ASTs), underground storage tanks (USTs), and other containers/drums/vessels (hereinafter, "other containers"). For all ASTs and USTs, provide tank location, dimensions, storage volume, tank contents, and the existing volume of the contents. For all other containers, provide the location, size (volume), contents, and the existing volume of the contents. Provide ignitability characteristic (knowledge or flash point testing using a Pensky-Martens closed-cup tester, SW-846 Method 1010A, or a Setaflash closed-cup tester, SW-846 Method 1020B) of any liquid in any AST, UST, or other container identified in the inventory which is not empty.[1]

4.      Removing, disposing, and/or recycling all free liquids and/or sludges from all tanks (both ASTs and USTs), the oil/water separator, and any other containers at the facility, as well as from all secondary containment areas, in accordance with applicable state and federal regulations;

5.      Verifying the empty status of all tanks and other containers;

6.      Closing and securing all containers/drums; capping all hoses and pipe-ends; locking all tank valves; and installing security measures on any remaining tanks and other containers to deter unauthorized access and to prevent water infiltration;

7.      Securing access to all manways, open pits, and buildings at the facility;

8.      Removing all ASTs at the facility, or permanently closing all ASTs at the facility, in a manner that is consistent with the definition of "permanently closed" under 40 C.F.R. § 112.2;

9.      Permanently closing by removal all USTs at the facility consistent with the requirements of ADEM Admin. Code Chapter 335-6-15 (40 C.F.R. Part 280, Subpart G, and, as

---

[1] The term "empty" as used herein shall mean, for purposes of ASTs, that there is no flow from the tank when its drainage system is left open; for purposes of USTs, when all materials have been removed using commonly employed practices so that no more than one inch of residue remains in the tank(s); and for purposes of other containers, that they comply with the requirements described at 40 C.F.R. § 261.7(b)(1).

applicable, Subpart F), including the requirement to conduct a site assessment.  Any free [petroleum] product encountered in the excavation pit must be removed immediately;

10.   Removing the oil/water separator;

11.   Decontaminating any secondary containment areas to remove residual oils, sludges, or other debris;

12.   Performing a site assessment of both soil and groundwater contamination at and around the facility property, including any off-site areas that may have been impacted by subsurface or overland migration of contaminants, including drainage pathways;

13.   Excavating oil-contaminated soils within secondary containment areas, or on other areas of the facility property or off-site that may have been impacted by subsurface spills or migration of contaminants;

14.   Properly disposing of all waste material removed from the site, including performing any sampling, analysis, or waste determinations necessary to determine proper treatment, storage, and disposal methods;

15.   Identifying and removing any seeps into underground piping runs at the facility which may result in discharges to stormwater drains at or adjacent to the facility;

16.   Performing confirmation sampling to ensure adequate excavation and decontamination measures;

17.   Re-sampling existing monitoring wells (or installing and sampling new monitoring wells, as necessary) for identified chemicals of concern, including, but not limited to, BTEX compounds (benzene, toluene, ethyl benzene, and xylene), methyl tert-butyl ether (MTBE), polycyclic aromatic hydrocarbons (PAHs), ethylene dibromide (EDB), and 1,2-dichloroethane (1,2-DCA); and

18.   Conducting all site assessment and remediation activities (including implementing institutional controls, as appropriate) to address environmental contamination at or from the facility that exceeds applicable screening or cleanup levels, and restoring any off-site areas that have been affected by the work as nearly as possible to their original condition.